IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


FRANCISCO GUZMAN,                          :
            Petitioner,

      v.                               :
                                      CIVIL ACTION
GERALD ROZUM; GARY SANFORD,                         NO. 13-7083
*District Attorney*; and, ATTORNEY        :
GENERAL OF THE STATE OF
PENNSYLVANIA
            Respondents.                  :


**<u>MEMORANDUM</u>**

**Jones, II    J.**                                                    **April 12, 2017**

    **I.    Introduction**

      On February 16, 2006, Petitioner Francisco Guzman was convicted in the Philadelphia

Court of Common Pleas of first-degree murder, two counts of aggravated assault, carrying a

firearm without a license, possession of a criminal instrument, and recklessly endangering

another person. (No. CP-51-CR-0500771-2003; Trial Tr. vol. 7, 5–10, Feb. 16, 2006.)  On April

10, 2006, he was sentenced to a term of life imprisonment without parole on the murder

conviction, a consecutive six (6) to twelve (12)-year term of imprisonment on the assault

convictions, and a number of concurrent imprisonment terms on the remaining convictions. (Ct.

Com. Pl. Crim. Docket 3–4.) Petitioner now seeks habeas relief from his state-court convictions.

Pursuant to Local Civil Rule 72.1.IV(c), the matter was referred to United States Magistrate

Judge Carol Sandra Moore Wells for a Report and Recommendation ("R&R"). Judge Wells

issued an R&R denying Petitioner's request for relief, and Petitioner filed objections thereto,

which are presently pending before this Court. For the reasons set forth below, Petitioner's objections shall be denied.

## II.     History

### A.     Factual Background

The following facts are supported by evidence presented at trial.

Petitioner, along with Felix Baez, Randolph Miller, José Tirado, and Esau Tirado, dealt drugs in the area surrounding the intersection of Clearfield and Wendle Streets in Philadelphia. (Trial Tr. vol. 3, 157–163, Feb. 10, 2006; Trial Tr. vol. 4, 107–110, Feb. 13, 2006.) Petitioner supplied other dealers with drugs to sell and collected money from them once those drugs were sold. (Trial Tr. vol. 4, 109–110.)

At some point before Christmas Eve in 2000, Petitioner told Esau Tirado, that he "was going to deal with" Felix Baez because Baez owed Petitioner money. (Trial Tr. vol. 4, 111, 122.) Upon hearing that, Esau told his brother, José Tirado, to stop spending time with Baez and specifically, to not get into Baez's van on December 24, 2000. (Trial Tr. vol. 4, 115–117.) José Tirado, however, did not heed Esau's advice and rode with Baez, Randolph Miller, and Michael Cartagena in Baez's van to a bar that day. (Trial Tr. vol. 3, 167; Trial Tr. vol. 4, 117.)

When they arrived, Baez went into the bar to purchase drinks for the group, while José Tirado, Miller, and Cartagena stayed in the van to smoke marijuana. (Trial Tr. vol. 3, 169–170.) Tirado grew impatient after waiting a few minutes and directed Cartagena to tell Baez to hurry up. (Trial Tr. vol. 3, 170.) Cartagena exited the van, entered the bar, and found Baez playing cards. (Trial Tr. vol. 3, 170.) Baez gave Cartagena his car keys, told him to buy the group's drinks, and drive Tirado home if he wished to go. (Trial Tr. vol. 3, 170–171.) Cartagena bought the drinks, left the bar, and returned to Baez's parked van, entering it through the driver's-side

door. (Trial Tr. vol. 3, 170–171.) Cartagena, Tirado, and Miller drank for approximately five minutes while sitting in the vehicle, at which point Tirado asked Cartagena to take him home. (Trial Tr. vol. 3, 171.) As Cartagena attempted to start the van, Petitioner approached and began shooting into the vehicle. (Trial Tr. vol. 3, 171–178.)

Michael Cartagena testified that he was "looking face to face with the defendant . . . for a minute" immediately before the shooting began.[1] (Trial Tr. vol. 3, 174–176.) José Tirado was shot three times and died at the scene.[2] (Trial Tr. vol. 3, 92–93, 178.) Miller was shot once in his arm, and Cartagena's jacket was grazed by a bullet. (Trial Tr. vol. 3, 176; Trial Tr. vol. 5, 92–93, Feb. 14, 2006.) Miller spent several days recovering at Temple University Hospital and suffered permanent nerve damage to his left arm as a result of his wound. (Trial Tr. vol. 4, 20; Trial Tr. vol. 5, 92.)

On Christmas Day—the day after José Tirado was killed—Petitioner went to Esau Tirado's house and told Esau's mother that he was "sorry that that happened to your son. It was not meant to happen."[3] (Trial Tr. vol. 4, 120.) Iliana Tirado (Esau's and José's sister) was also at the house when Petitioner arrived, and she testified that Petitioner apologized for José's death and told Esau that "you knew it was going to happen . . . because I let you know." (Trial Tr. vol. 4, 180–182.) Petitioner then directed Esau Tirado to get into his car, whereupon Tirado noticed

---

[1] Cartagena also testified that he was approximately two feet from the shooter, and that even though the shooter's face was covered by a scarf from his upper lip down, Cartagena knew Petitioner was the shooter. (Trial Tr. vol. 3, 174–175, 187–188.)

[2] Philadelphia County Assistant Medical Examiner Edwin Lieberman testified that the cause of José Tirado's death was multiple gunshot wounds and the manner of death was homicide. (Trial Tr. vol. 5, 77.)

[3] Esau Tirado testified that Petitioner made that statement to Tirado's mother in Spanish. (Trial Tr. vol. 4, 120–121.)

that Petitioner was carrying a nine-millimeter handgun.[4] (Trial Tr. vol. 4, 121.) Petitioner asked Tirado whether he had seen Baez because Petitioner wanted Baez to pay his debt. (Trial Tr. vol. 4, 122.) Tirado responded that he had not, and Petitioner drove Tirado back to his house. (Trial Tr. vol. 4, 122.)

Also on December 25, 2000, Michael Cartagena was interviewed by police regarding the shooting that took place the night before. (Trial Tr. vol. 3, 180.) Cartagena did not tell the detectives who he believed the shooter to be at that time because he "was still shaken up by the incident." (Trial Tr. vol. 3, 181.) When he spoke with detectives again on May 17, 2001, Cartagena identified the Petitioner from a photograph lineup as "Pete."[5] (Trial Tr. vol. 3, 183.) Cartagena told them that he had known Petitioner for approximately two years from having seen him deal drugs in his neighborhood near the intersection of Clearfield and Wendle Streets in Philadelphia. (Trial Tr. vol. 3, 157–158, 212–213, 218.) Randolph Miller testified that he also knew Petitioner from his involvement in the drug dealings that frequently occurred at the corner of Clearfield and Wendle Streets. (Trial Tr. vol. 4, 7–8.)

On January 2, 2003, the police told Michael Cartagena that they had arrested Petitioner. (Trial Tr. vol. 3, 221.) Cartagena positively identified Petitioner as the individual who shot into Baez's van on December 24, 2000, wounding Randolph Miller and killing José Tirado. (Trial Tr. vol. 3, 220–221.)

---

[4] Esau Tirado testified that Petitioner always carried a nine-millimeter handgun (Trial Tr. vol. 4, 127), even though Petitioner did not possess a valid firearm permit (Trial Tr. vol. 5, 95). Furthermore, Police Officer John Cannon, who investigated the scene where José Tirado was killed on December 24, 2000, testified that the caliber of the fired cartridge cases and bullet that were found near Baez's van was 0.9 millimeters. (Trial. Tr. vol. 5, 49–50.)
[5] Michael Cartagena testified that he knew Petitioner as "Pete." (Trial Tr. vol. 3, 157.)

### B.    Procedural Background

#### i.    Direct and Collateral Appeal

Following the trial court's denial of Petitioner's post-sentence motions, Petitioner filed a timely appeal to the Superior Court of Pennsylvania. *Commonwealth v. Guzman*, No. 1624EDA 2006, slip op. at 1 (Pa. Super. Ct. July 3, 2007). The Superior Court affirmed Petitioner's judgment of sentence, *id.*, and the Supreme Court of Pennsylvania denied allocatur on May 14, 2008, *Commonwealth v. Guzman*, 932 A.2d 253 (Pa. 2008).

On June 6, 2008, Petitioner filed a timely *pro se* petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541–9546. (Pet'r's Mot. Post Conv. Relief, June 6, 2008.) An Amended PCRA Petition was filed by Petitioner's appointed counsel on May 21, 2010. (Pet'r's Am. Pet. Post Conv. Relief, May 21 2010.) On November 23, 2010, the PCRA court gave notice to Petitioner of its intent to dismiss his Amended PCRA Petition without a hearing. (Notice, Nov. 23, 2010 (citing Pa. R. Crim. P. 907).) In accordance therewith, the PCRA court entered an Order on February 18, 2011, dismissing Petitioner's Amended PCRA Petition. (Order, Feb. 18, 2011.)The Superior Court of Pennsylvania affirmed that Order on September 5, 2012. *Commonwealth v. Guzman*, No. 788 EDA 2011, slip op. at 8 (Pa. Super. Ct. Sept. 5, 2012). The Supreme Court of Pennsylvania denied allocatur on March 27, 2013. *Commonwealth v. Guzman*, 63 A.3d 1244 (Pa. 2013).

### ii.    Petitioner's Habeas Claims

Pursuant to 28 U.S.C. § 2254, Petitioner timely filed the instant *pro se* habeas action on November 11, 2013 in the Western District of Pennsylvania ("§ 2254 Petition").[6] (Pet. 29, ECF No. 1–3.) The matter was transferred to the Eastern District of Pennsylvania on November 14, 2013. (Order 4, ECF No. 1.) Petitioner's claims for relief are as follows:[7]

1. The trial court erred by admitting testimony from Iliana Tirado over Petitioner's defense counsel's objection;

2. The trial court erred by admitting evidence indicating that Petitioner was a drug dealer and violent person;

3. The weight of the evidence did not support the verdict;

4. Both of Petitioner's trial lawyers were ineffective because they failed to present available alibi witnesses and unreasonably instructed Petitioner not to present an alibi defense;

5. One of Petitioner's trial lawyers (Attorney Gary Server) was ineffective because he advised Petitioner to not present an alibi defense;

6. Petitioner's trial lawyers were ineffective because they failed to request adequate limiting instructions regarding testimony that portrayed Petitioner as a drug dealer and violent individual;

7. The trial court erred by refusing to grant a mistrial pursuant to Petitioner's objection to the admissibility of Iliana Tirado's testimony;

8. Petitioner's trial lawyers were ineffective because they failed to object to the trial court's transferred intent instruction;

---

[6] "The federal 'prisoner mailbox rule' provides that a document is deemed filed on the date it is given to prison officials for mailing." *Pabon v. Mahanoy*, 654 F.3d 385, 391 n.8 (3d Cir. 2011) (citing *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998)). Petitioner declared, under penalty of perjury, that he delivered his § 2254 Petition to prison authorities for mailing on November 11, 2013. (Pet. 29.) Therefore, it is deemed filed on November 11, 2013, even though the Clerk of the Court did not receive it until November 13, 2013. (*See* Pet. 1.)

[7] Petitioner's first nine claims for relief are appended to his § 2254 Petition (Pet. 16–27), and he filed a timely amendment thereto on December 11, 2013 by attaching an additional six claims for relief to a letter he mailed to this Court (*See* Pet'r's Amendment 2–7, ECF No. 2 (hereinafter "Am. Pet.")).

9. Petitioner's trial lawyers were ineffective because they failed to object to the prosecutor's remark during her opening statement that Petitioner admitted to Esau Tirado he unintentionally killed José Tirado;

10. No warrant was ever issued that authorized Petitioner's arrest;

11. The statutes Petitioner violated were never lawfully enacted;

12. The court, criminal procedure, and evidence rules pursuant to which Petitioner was prosecuted violate the Constitution of the United States and were never lawfully enacted;

13. The Constitution of the Commonwealth of Pennsylvania is unconstitutional and was never lawfully adopted;

14. Petitioner's life sentence violated the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania because at the time of sentencing, he was under the age of 25; and

15. Petitioner's constitutional rights to a fair trial, equal protection under the law, and to be free from cruel and unusual punishment were violated because he was not provided an interpreter when he was first taken into custody or at trial.

(Pet. 16–27; Am. Pet. 2–7.)

Thereafter, this Court entered an Order referring Petitioner's § 2254 Petition to the Honorable Carol Sandra Moore Wells, United States Magistrate Judge, for a Report and Recommendation. (Order, ECF No. 5.) The Commonwealth filed a Response to the Petition on September 5, 2014, arguing that no relief was due because Petitioner's claims were either not cognizable on habeas review, procedurally defaulted, or without merit. (Resp. 2, ECF No. 12.) Petitioner replied on November 28, 2014. (Reply, ECF No. 19.)

### iii. Report and Recommendation / Petitioner's Objections

Magistrate Judge Wells issued her R&R on June 16, 2016, in which she determined that all of Petitioner's claims for habeas relief were either not cognizable, procedurally defaulted, or meritless. (R&R 16, ECF No. 24.) Petitioner lodged eight objections to the Magistrate Judge's

R&R. (Excs. to R&R, ECF No. 27 (hereinafter "Objs.").) The Commonwealth responded to

Petitioner's objections on September 15, 2016 (ECF No. 32), and Petitioner replied thereto on

October 19, 2016 (Resp. to Commonwealth's Objs., ECF No. 34 (hereinafter "Resp.")). The

matter is now ripe for review by this Court.

### III. Standards of Review

#### A. Objections to Report and Recommendation

When objections are filed to the R&R of a Magistrate Judge, the District Court must

conduct *de novo* review of those portions of the R&R to which objection is made. 28 U.S.C. §

636(b)(1). If there are no objections to the R&R or when reviewing those portions of the R&R to

which no objections are directed, the court should, as a matter of good practice, "satisfy itself

that there is no clear error on the face of the record in order to accept the recommendation." Fed.

R. Civ. P. 72(b), advisory committee notes; *see also Oldrati v. Apfel,* 33 F. Supp. 2d 397, 399

(E.D. Pa. 1998) ("In the absence of a timely objection . . . this Court will review [the

Magistrate's] Report and Recommendation for 'clear error.'") (citations omitted).

#### B. Exhaustion and Procedural Default

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. §§ 2241–2266

("AEDPA"), deals with the right of all persons in state custody, or in federal custody, to file a

petition in federal court seeking the issuance of a writ of habeas corpus. In the context of a

prisoner in state custody, if such a writ of habeas corpus is issued by a federal court, the prisoner

will be released from such state custody on the grounds that certain rights accruing to that

prisoner pursuant to the United States Constitution have been violated; habeas corpus motions

pursuant to the AEDPA are the only possible means by which "state prisoners attacking the

validity of the fact or length of their confinement" may obtain this type of relief from state

custody. *Torres v. Fauver*, 292 F.3d 141, 146 (3d Cir. 2002) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973)) (internal quotation marks omitted).

By means of the AEDPA, Congress also created a series of intentionally restrictive gate-keeping conditions which must be satisfied in order for a prisoner to prevail on a habeas petition. The strict AEDPA gate-keeping procedures were enacted by Congress in order to support the policy of creating finality with respect to state and federal criminal prosecutions. One such gate-keeping procedure is the requirement of exhaustion. "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1); *see also Houck v. Stickman*, 625 F.3d 88, 93 (3d Cir. 2010) ("A district court ordinarily cannot grant a petition for a writ of habeas corpus arising from a petitioner's custody under a state court judgment unless the petitioner first has exhausted his available remedies in state court.") (citing 28 U.S.C. § 2254(b)). In other words, the petitioner must have "fairly presented" the federal habeas claims to the state courts. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Evans v. Court of Common Pleas, Del. Cnty., Pa.*, 959 F.2d 1227, 1231 (3d Cir. 1992) (citations omitted). "To 'fairly present' a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). A petitioner in Pennsylvania must appeal such claims to the Pennsylvania Superior Court. *Whitney v. Horn*, 280 F.3d 240, 250 n.10 (3d Cir. 2002).  Petitioner carries the burden of proving exhaustion. *Coady v. Vaughn*, 251 F.3d 480, 488 (3d Cir. 2001) (citing *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993)).

Where a claim was not exhausted in state court, it is said to be procedurally defaulted. To bring a procedurally defaulted claim in federal proceedings, Petitioner must demonstrate either: (a) cause for the default and actual prejudice arising from the alleged violation of federal law; or, that (b) failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish the "cause" requirement, Petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Werts v. Vaughn*, 228 F.3d 178, 192–93 (3d Cir. 2000) (quoting *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986)). Establishing "prejudice" requires the "petitioner [to] prove 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 193 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Alternatively, to establish a fundamental miscarriage of justice, Petitioner must demonstrate actual innocence. *Schlup v. Delo*, 513 U.S. 298, 324–32 (1995).

## C.    Merits Review

Where Petitioner's claims were adjudicated on the merits in state court, the AEDPA deference standard applies to this Court's review of the merits determination. *Rolan v. Coleman*, 680 F.3d 311, 321 (3d Cir. 2012). The AEDPA limits federal habeas review of state-court judgments. *Werts*, 228 F.3d at 195. A petition for habeas corpus may only be granted if: (1) the state court's adjudication of the claim "resulted in a decision contrary to, or involved in an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or" (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). When a claim has been adjudicated on the merits in

state court, federal habeas review is limited to the record before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398–99 (2011).

### D. Ineffective Assistance of Counsel

The Sixth Amendment right to counsel "is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To prove that counsel was ineffective, Petitioner must establish that: (1) counsel's performance was constitutionally deficient; and (2) that deficiency prejudiced Petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance "requires showing that counsel made errors so serious that he or she was not functioning as the 'counsel guaranteed to the defendant by the Sixth Amendment.'" *Id.* In essence, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms. *Id.* at 688. Petitioner must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* at 690 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Prejudice requires showing that counsel's errors were serious enough to deprive the defendant of a fair trial. *Id.* at 687.

### IV. Discussion

Petitioner herein has raised eight objections to the R&R that, in the aggregate, challenge the Magistrate's recommended dispositions for all but one of his habeas claims. This Court addresses each objection in turn.

### A.    First Objection

Petitioner's first objection pertains to Claims One, Three, and Seven of his habeas petition.[8] (Objs. 2–4.) It is overruled for the following reasons.

In Claim One, Petitioner alleges he was denied his constitutional right to a fair trial because the trial court erred by admitting testimony from Iliana Tirado over his defense counsel's objection. (Pet. 16, ECF No. 1-3.) "Such an inquiry . . . is no part of a federal court's habeas review of a state conviction [because] federal habeas corpus relief does not lie for errors of state law[,]" with one exception. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (internal quotation marks omitted). Such a claim is only entitled to habeas relief if "the admission of evidence violated [Petitioner's] federal constitutional rights." *Id.* at 68. "[E]videntiary errors of state courts are not considered to be of constitutional proportion . . ., unless the error deprives a defendant of fundamental fairness in his criminal trial." *Bisaccia v. Attorney Gen. of N.J.*, 623 F.2d 307, 312 (3d Cir. 1980) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 642–43 (1974); *United States ex rel. Perry v. Mulligan*, 544 F.2d 674, 678 (3d Cir. 1976), *cert. denied*, 430 U.S. 972 (1977)).  Petitioner fails to meet this extremely high threshold.[9]

---

[8] The R&R analyzes these claims as purely state-law questions. (R&R 4–5.) However, before Petitioner articulates his claims for habeas relief in his § 2254 Petitioner, he argues that the allegations contained within those claims denied him of his right to effective assistance of counsel at trial and on direct appeal pursuant to the Sixth Amendment, and his right to a fair trial and due process guaranteed by the Fifth, Sixth, and Fourteenth Amendments. (Pet. 16.) Therefore, this Court's analyses that follow do not treat Claims One, Three, and Seven as purely challenges to determinations of state-law questions.

[9] Petitioner's trial counsel promptly objected to Iliana Tirado's testimony on the grounds that it was inadmissible hearsay. (Trial Tr. vol. 4, 187.) The trial court judge then gave cautionary instructions to the jurors, explaining what they could and could not take from her testimony. (Trial Tr. vol. 4, 189.) These facts support this Court's conclusion that Claim One fails to establish Petitioner was deprived of fundamental fairness in his criminal trial. *Bisaccia*, 623 F.2d at 312.

Moreover, assuming *arguendo* Petitioner met the requisite threshold, he would not be entitled to habeas relief because Claim One is procedurally defaulted. This Court's independent review of the state-court Record confirms Petitioner never raised Claim One on constitutional grounds in state-court proceedings. Accordingly, Petitioner's objection to the Magistrate's recommended disposition of Claim One is overruled.

In Claim Three, Petitioner asserts the jury's verdict was contrary to the weight of the evidence presented at trial. (Pet. 18.) Such a claim, unlike a claim challenging the sufficiency of evidence, essentially asks this Court to serve "as a 'thirteenth juror' and independently evaluate the weight of the evidence." *Gov't of V.I. v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987) (citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982)). As such, it is also not cognizable on habeas review. "The 'weight of the evidence' refers to a 'determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other." *Tibbs*, 457 U.S. at 37–38 (quoting *Tibbs v. Florida*, 397 So.2d 1120, 1123 (Fl. 1981)) (alterations in original). Thus, by asserting Claim Three, Petitioner requests that this Court question the credibility of the evidence presented at trial. *Tibbs*, 457 U.S. at 37. Federal habeas courts, however, are not permitted to re-evaluate determinations made by state courts regarding the credibility of trial evidence. *Marshall v. Lonberger*, 459 U.S. 422, 434–35 (1983); *Weeks v. Snyder*, 219 F.3d 245, 258 (3d Cir. 2000). State trial courts, not federal habeas courts, have observed the demeanor of witnesses and are, therefore, uniquely positioned to assess the integrity of the admitted evidence. *Nara v. Frank*, 488 F.3d 187, 201 (3d Cir. 2007) (citing *Miller v. Fenton*, 474 U.S. 104, 114 (1985); *Boyd v. Boyd*, 169 N.E. 632, 634 (N.Y. 1930)).

Petitioner does not distinguish between weight and sufficiency of evidence. He uses these terms interchangeably in his objection to the Magistrate's conclusion that Claim Three is not

cognizable. (Objs. 1–3.) Petitioner even appears to contend that Claim Three, although patently described as a weight of evidence claim in his § 2254 Petition (Pet. 18–19), is equivalent to an insufficient evidence claim. (*See* Objs. 1–3; Resp. 3–4.) However, any such assertion is rendered irrelevant; even if this Court evaluated Claim Three as an insufficient evidence claim, Petitioner would not be entitled to relief. "[A] conviction rests upon insufficient evidence when, even after viewing the evidence in the light most favorable to the prosecution, no rational factfinder could have found the defendant guilty beyond a reasonable doubt." *McMullen v. Tennis*, 562 F.3d 231, 239 (3d Cir. 2009) (quoting *Tibbs*, 457 U.S. at 37) (internal quotation marks omitted). Petitioner has alleged no facts or arguments that would support such a conclusion (*See* Pet. 18–19; Objs. 1–3; Resp. 3–4). Upon independent review of the entire record, this Court finds the evidence adduced at trial to be wholly sufficient to sustain Petitioner's conviction. Accordingly, his objection to the Magistrate's recommended dismissal of Claim Three is overruled.

Petitioner's Claim Seven (Pet. 23) similarly fails to establish he was deprived of his constitutional right to a fair trial. Therein, Petitioner argues that the trial court erred in denying counsel's demand for a mistrial, which was based upon the trial court's allegedly improper admission of Iliana Tirado's testimony into evidence. (Pet. 23.) Because this claim also challenges a determination at trial based upon a state-law question, and Petitioner has not demonstrated that the fundamental fairness of his trial was undermined by same, Petitioner is barred from seeking federal habeas review of the claim. Furthermore, even if Claim Seven established Petitioner was deprived of fundamental fairness in his criminal trial, it is not reviewable by this Court because it is procedurally defaulted. Claim Seven was never raised in any state-court proceedings as the alleged result of ineffective assistance of counsel. (Pet. 24.) However, counsel's decision to not present this meritless claim does not constitute

ineffectiveness and thus does not justify excusing Claim Seven's default. *Martinez v. Ryan*, 132 S. Ct. 1309, 1319–20 (2012); *Strickland v. Washington*, 466 U.S. 668, 698–700 (1984). Petitioner's objection to the R&R's disposition of Claim Seven is, therefore, overruled.

### B.    Second Objection

Petitioner's second objection challenges the Magistrate's recommendation that Claim Ten not be afforded habeas review because it is prudentially barred. (Objs. 4) Claim Ten in Petitioner's § 2254 Petition alleges that his arrest warrant was invalid and, in turn, his arrest and prosecution violated the Fourth Amendment. (Am. Pet. 2.) In his Reply to the Commonwealth's Response to Petitioner's Objections, he further explains that Claim Ten is actually a Sixth Amendment ineffectiveness claim based upon his counsel's failure to bring the Fourth Amendment claim described in Petitioner's § 2254 Petition. (Resp. 5, ECF No. 34.) Whether analyzed under the Fourth Amendment or Sixth Amendment, Claim Ten is meritless.

Federal habeas courts are not permitted to review Fourth Amendment claims if the petitioner was provided an opportunity for full and fair litigation of such a claim in state court. *Cardwell v. Taylor*, 461 U.S. 571, 572 (1983) (citing *Stone v. Powell*, 428 U.S. 465 (1976)); *Deputy v. Taylor*, 19 F.3d 1485, 1491 (3d Cir. 1994). However, "*Stone* . . . does not bar federal courts from hearing habeas petitions based on claims . . . that the petitioner received ineffective assistance of counsel when the petitioner contends that his or her attorney failed to assert a Fourth Amendment claim." *Gilmore v. Marks*, 799 F.2d 51, 55 (3d Cir. 1986) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 382–83 (1986)). Nevertheless, "[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious

and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman*, 477 U.S. at 375.

The first several arguments Petitioner attempts to make in objecting to the Magistrate's recommended disposition of Claim Ten appear to be related to the alleged invalidity of his arrest warrant and, therefore, the Fourth Amendment. (Objs. 4–6.) These arguments are meritless, as Petitioner points to no facts of record in support of his claim and relies upon irrelevant case law in an attempt to demonstrate he is entitled to relief. (Objs. 4–6.) In the final paragraph of his second objection, Petitioner refers to the Sixth Amendment and ineffective assistance of counsel, but this argument also fails because, again, he offers no facts or arguments that show that his Fourth Amendment claim is valid.[10] (*See* Objs. 6; Resp. 5.)

Courts have consistently held that "[e]ven assuming the warrant was defective, [there is] no reason to 'retreat from the established rule that [an] illegal arrest or detention does not void a subsequent conviction.'" *United States v. Farnsworth*, 302 F. App'x 110, 112–13 (3d Cir. 2008) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975)). Moreover,

> To the extent [a petitioner] raises PCRA counsel's ineffectiveness as an excuse to overcome the procedural default of the claim that trial counsel was ineffective for failing to raise an objection to the arrest warrant, we are not convinced that PCRA counsel was ineffective given that PCRA counsel need not raise a meritless claim in light of the fact that even if there were a technical problem with the arrest warrant, Petitioner cannot show that he was prejudiced, *i.e.*, that the result of his criminal proceedings would have been different given that if such an objection were raised by counsel, a technical amendment to the arrest warrant no doubt would have been permitted. Even if such an amendment to the arrest warrant were not permitted, any challenge to the arrest warrant would not have changed the outcome of Petitioner's criminal proceedings.

_____

[10] Petitioner would need to prove that his arrest warrant was invalid in order to show that his Fourth Amendment claim is properly incorporated into his Sixth Amendment claim. Although a copy of Petitioner's arrest warrant (Warrant of Arrest No. 270252, Jan. 30, 2003) is contained within the state-court record, Petitioner alleges no facts to demonstrate it was invalid. (*See* Objs. 6; Resp. 5.)

*Patterson v. Lamas*, Civ. No. 13-414, 2015 U.S. Dist. LEXIS 8559, at *33-34 (W.D. Pa. Jan. 26, 2015).

Therefore, regardless of whether Claim Ten is treated as a Fourth or Sixth Amendment claim, it is without merit. For these reasons, Petitioner's second objection is overruled.

### C.      Third Objection

Petitioner's third objection pertains to the Magistrate's recommended dismissal of Claims Six, Eight, Nine, and Fifteen in his § 2254 Petition. (Objs. 5.) Therein, Petitioner argues that the Magistrate's recommendation for the aforementioned claims was based upon "the glaring problems surrounding the Philadelphia Court system[,]" but offers nothing in support of this general and conclusory contention. (Objs. 5.) Because federal district courts are not required to engage in *de novo* review of objections to a Magistrate's R&R that lack specificity, this Court adopts Magistrate Judge Well's recommended dismissal of Claims Six, Eight, Nine, and Fifteen. *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) (citing 28 U.S.C. § 636(b)(1); *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir. 1984)). Petitioner's third objection is overruled.

### D.      Fourth Objection

Petitioner's fourth objection challenges the Magistrate's recommendation that Claims Six, Eight, and Nine be deemed procedurally defaulted. (Objs. 6.) These claims all allege the assistance of Petitioner's trial counsel was ineffective (Pet. 22–23, 24–26, 27–28) and are unexhausted because Petitioner failed to raise them on appeal in state-court proceedings, *see Commonwealth v. Guzman*, No. 788 EDA 2011, slip op. at 1–2 (Pa. Super. Ct. Sept. 5, 2012). Furthermore, as the Magistrate properly noted, Petitioner would be unable to file a new PCRA petition in an effort to exhaust these claims because the PCRA's statute of limitations has expired. (R&R 7 (citing 42 Pa. Cons. Stat. Ann. § 9545(b)(1)).) A claim made in a petition for a

writ of habeas corpus is procedurally defaulted if it was not presented in state-court proceedings and the statute of limitations for bringing that claim pursuant to a PCRA petition has expired. *Keller v. Larkins*, 251 F.3d 408, 415 (3d Cir. 2001). Accordingly, the Magistrate did not err in her determination that Claims Six, Eight, and Nine must be deemed procedurally defaulted.

Petitioner presents no new evidence that proves his innocence. Thus, he fails to establish that a fundamental miscarriage of justice would occur if this Court refuses to consider these claims. However, Petitioner does attempt to show cause for the default by arguing that his PCRA counsel was ineffective in failing to raise said claims in state court. (Pet. 23, 26, 28.)  In order for Petitioner's argument to succeed, he must establish that (1) the effectiveness of his PCRA counsel's "representation fell below an objective standard of reasonableness" under the prevailing professional norms, and (2) that deficiency in performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 669, 687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

Because Petitioner offers nothing to demonstrate same, his ineffectiveness argument regarding  Claims Six, Eight, and Nine fails.

### i.  Claim Six

Claim Six alleges Petitioner's trial counsel was ineffective for failing to request additional limiting instructions with respect to evidence presented that suggested Petitioner had a reputation as a drug dealer. (Pet. 22.) When this evidence was presented, Petitioner's trial counsel objected to its admission, and the trial court promptly and thoroughly explained to the jurors that its only purpose was to show that Petitioner had a motive to kill José Tirado—not to prove that Petitioner was the murderer or that he was an otherwise "bad person." (Trial Tr. vol. 4, 112–114.)  The cautionary instruction administered by the trial court was wholly proper and

Petitioner has shown no prejudice as a result thereof. PCRA counsel presumably declined to present Claim Six in Petitioner's PCRA petition because the claim was meritless. As such, counsel cannot be deemed ineffective. *See Strickland*, 466 U.S. at 698–700 (explaining that an attorney's decision to not present a meritless claim does not constitute ineffective assistance of counsel). Consequently, Claim Six's procedural default is not excused. *Martinez v. Ryan*, 132 S. Ct. 1309, 1319–20 (2012) (holding that a procedural default need not be excused when the underlying claim is without merit or any factual support).

### ii. Claim Eight

Claim Eight alleges Petitioner's trial counsel was ineffective for not objecting to the trial court's transferred intent instruction. (Pet. 24.) However, this claim is also meritless, thereby prohibiting any finding that Petitioner's PCRA counsel's failure to raise it in his PCRA petition constituted ineffective assistance of counsel and thus prohibiting any finding of excuse for Claim Eight's procedural default. *Martinez*, 132 S. Ct. at 1319–20.

In Pennsylvania, the pattern instructions for transferred intent reads as follows:

> The Commonwealth has alleged that while the defendant[s] [intended to kill] [conspired with the intent to kill] [name of intended victim], [he] [she] [they] actually caused the death of [name of deceased].

> If you find beyond a reasonable doubt that the defendant[s] [intended to kill] [conspired with the intent to kill] [name of intended victim] and [was] [were] acting with that intent at the time [he] [she] [they] in fact killed [name of deceased], you may find the defendant[s] acted with the specific intent to kill under what the law calls the doctrine of transferred intent.

> What this means is that if the actual result the defendant[s] intended differs from what [he] [she] [they] contemplated only because a different person than the one actually intended was killed, the element of causing the death with specific intent to kill is still established.

Pa. SSJI (Crim) 15.2501C.1.

In this case, the trial court charged the jury as follows with regard to transferred intent:

> There exists in the law a theory of criminal responsibility known as the doctrine of transferred intent. It provides that if the intent to commit a crime exists, then the same intent can be transferred for the purpose of finding the intent elements of another crime.
>
> As it applies to this case, if the defendant had the intent to injure an intended victim during the incident but actually injured someone other than the intended victim, then the defendant's intent to cause injury is transferred from his intended victim to the actual victim who was, in fact, injured.
>
> Accordingly, under the doctrine of transferred intent, it does not matter that the actual victim in this incident may not have been the intended victim of the crime. So long as you find the intent to commit a crime exists beyond a reasonable doubt, this same intent may be transferred to the actual victim.

(Trial Tr. vol. 6, 18-19, Feb. 15, 2006.)

The trial court's instruction properly permitted the jury to find that Petitioner had the requisite intent to commit first-degree murder when he killed José Tirado by firing his gun into Felix Baez' van because Baez owed him drug money. (*See* Trial Tr. vol. 6, 23–24.) *See also Carpenter v. Eckard*, Civ. No. 14-4751, 2016 U.S. Dist. LEXIS 127810, at *7-8 (E.D. Pa. Sept. 19, 2016) (rejecting habeas petitioner's claim regarding propriety of transferred intent charge, finding instruction that "merely suggested that the jury could find petitioner guilty of murder if it found beyond a reasonable doubt that the Commonwealth proved the requisite predicate facts (cause of death and specific intent) . . . was proper, and trial counsel was not ineffective for failing to challenge it."); *Carpenter v. Eckard*, Civ. No. 14-4751, 2015 U.S. Dist. LEXIS 165714, at *16-17 (E.D. Pa. Dec. 8, 2015) ("It is well established that a state court's interpretation of state law binds a federal court sitting in habeas corpus. [In this case], the state court found that the trial court's [transferred intent] jury instruction was proper under Pennsylvania law. Thus, any objection to the same would have been denied as meritless. Counsel cannot be found to be ineffective for failing to raise a meritless objection.").

Therefore, like Claim Six, Petitioner's PCRA counsel was not ineffective for reasonably declining to raise Claim Eight because it was not supported by any facts of record. Accordingly, Claim Eight's procedural default is not excused. *Martinez*, 132 S. Ct. at 1319–20.

### iii.    Claim Nine

In Claim Nine, Petitioner asserts his trial counsel was ineffective for failing to object to a portion of the prosecutor's opening statement, wherein the prosecutor told the jury it would hear the victim's brother, Esau Tirado, testify that Petitioner came to the victim's house the day after the shooting, apologized for the victim's death, and explained that the shooting was meant for Felix Baez. (Pet. 27; Trial Tr. vol. 3, 76–77.) Petitioner alleges these statements were fabricated by the prosecutor and that his trial counsel should have objected to their admission into evidence. (Pet. 27.)

During trial, Esau Tirado did in fact testify that Petitioner came to José Tirado's house the day after he was killed and told Tirado's mother—in Esau's presence—"I'm sorry that happened to your son. It was not meant to happen." (Trial Tr. vol. 4, 120.) Mr. Tirado's testimony was corroborated when the victim's sister, Iliana Tirado, similarly testified that Petitioner came to their house the day after José was killed and said to Esau in her mother's presence, "It was not for your brother. I'm sorry. It was not for your brother." (Trial Tr. vol. 4, 180–81.) The jury had an opportunity to observe these two witnesses, assess their demeanors, and pass on their credibility. Petitioner offers absolutely no evidence of any fabrication or prosecutorial misconduct. Accordingly, trial counsel cannot be deemed ineffective for failing to raise a baseless objection and Petitioner's default of same is not excused. *Martinez* v. *Ryan*, 132 S.Ct. 1309, 1319–20 (2012); *Strickland v. Washington*, 466 U.S. 668, 698–700 (1984).

In view of the foregoing, Petitioner's fourth objection regarding Claims Six, Eight, and Nine is overruled.

### E. Fifth Objection

Petitioner's fifth objection to the R&R pertains to Claim Fifteen in his § 2254 Petition, wherein Petitioner alleges his prosecution violated the Fifth, Sixth, and Eighth Amendments to the Constitution of the United States. (Am. Pet. 7; Objs. 8.) More specifically, Petitioner argues: (1) he was denied due process because he was not provided an interpreter during trial;[11] (2) he was denied his right to effective assistance of counsel because his trial counsel failed to require an interpreter to translate the dialogue at trial for Petitioner and to provide Petitioner with the trial court record, thereby preventing Petitioner from understanding the charges against him; and (3) he was subject to cruel and unusual punishment by being placed in a prison, prior to trial, "many miles away from counsel [and] family," and by being prohibited from using the telephone at prison to speak with his counsel and family.[12] (Am. Pet. 7.)

Petitioner failed to raise any of these claims in state-court proceedings, which renders them unexhausted. *See Commonwealth v. Guzman*, No. 788 EDA 2011, slip op. at 1–2 (Pa. Super. Ct. Sept. 5, 2012). Petitioner is now time-barred from attempting to exhaust them by filing a new PCRA petition. 42 Pa. Cons. Stat. Ann. § 9545(b)(1). Thus, Claim Fifteen is procedurally defaulted. *Keller v. Larkins*, 251 F.3d 408, 415 (3d Cir. 2001).

Petitioner appears to argue that Claim Fifteen's default should be excused because his PCRA counsel was ineffective in failing to raise it on appeal. Inasmuch as all three of the

---

[11] Petitioner's native language is Spanish, and he alleges that he speaks English at a second-grade level. (Appl. Appt. Counsel 4, 6, 8, ECF No. 1-3.) He further states that fellow inmates assisted him in drafting his § 2254 Petition. (Appl. Appt. Counsel 3.)

[12] The R&R did not address the second and third arguments above. For the reasons set forth herein, they are nevertheless meritless.

allegations Petitioner makes in support of Claim Fifteen are without merit, counsel cannot be deemed ineffective for failing to raise same.

First, the record shows Petitioner was in fact provided a translator at trial. (Trial Tr. vol. 3, 4.) As such, Petitioner's Fifth Amendment argument, as contained within his fifteenth habeas claim, fails.

Second, Petitioner's allegation that he was not "provided with a contemporaneous and constant interpretation of the proceedings" (Am. Pet. 7) does not demonstrate that his Sixth Amendment right to effective assistance of counsel was violated. The alleged deficiency in Petitioner's translator's performance provides no support for an ineffective assistance claim because such a claim must be based upon *counsel's* performance. *See Strickland*, 466 U.S.at 687 (emphasis added). Moreover, even if an ineffective assistance claim could be based upon a court-appointed translator's alleged deficient performance, Petitioner's argument would fail because he cannot prove that his translator's alleged deficiency prejudiced him. *Id.* To demonstrate prejudice, Petitioner would need to show that his translator's errors deprived him of a fair trial. *Id.* However, "[m]inor deviations or occasional lapses in translation will not render a trial fundamentally unfair." *United States v. Hernandez*, 994 F. Supp. 627, 630 (E.D. Pa. 1998) (citing *United States v. Joshi*, 896 F.2d 1303, 1309 (11th Cir. 1990)).

In this case, Petitioner has provided this Court with no indication that he expressed to the trial court or counsel he was having any difficulty understanding what was happening throughout the course of his trial. *See Gimenez v. Cameron*, Civ. No. 14-6255, 2015 U.S. Dist. LEXIS 47034, at *14 (E.D. Pa. Mar. 10, 2015) (rejecting a habeas petitioner's claim that counsel was ineffective for failing to provide an interpreter during attorney/client meetings, because "[t]he court's independent review . . . reveals that petitioner did not express confusion or lack of

understanding [during his plea and sentencing] hearings.") In fact (and as discussed in greater detail below), the trial court conducted a colloquy during which it asked Petitioner whether he was aware of his right to call available alibi witnesses; whether he desired to waive that right; and, whether he was satisfied with his trial attorneys' representation to that point. (Trial Tr. vol. 5, 83–85.) Petitioner responded affirmatively to all of the foregoing questions (Trial Tr. vol. 5, 83–85), which clearly demonstrates that he was not having difficulty understanding what was happening during trial.

Thus, Petitioner's translator's alleged failure to provide "contemporaneous and constant interpretation" at trial (Am. Pet. 7) does not prove that he was deprived of a fair trial and is not sufficient to support an ineffective assistance claim.[13] *Strickland*, 466 U.S. at 687. Accordingly, the ineffectiveness claim, as incorporated within Petitioner's fifteenth habeas claim, also fails.

Third, Petitioner's Eighth Amendment argument within Claim Fifteen does not provide a cause of action under the AEDPA. A "challenge [that] ultimately attacks . . . the validity of the continued conviction or the fact or length of the sentence . . . must be brought by way of habeas corpus petition. Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under [42 U.S.C.] § 1983 is appropriate." *Learner v. Fauver*, 288 F.3d 532, 542 (3d Cir. 2002). According to Petitioner, he "suffered cruel and unusual punish[ment] prior to trial" due to the location of the prison in which he was held and the alleged restrictions on his phone usage while detained therein. (Am. Pet. 7.) These allegations challenge the conditions of his pre-trial

---

[13] Furthermore, Petitioner's trial lawyers were not obligated—or likely able—to assess the translator's performance throughout trial. Petitioner never alleged in his § 2254 Petition that he requested a copy of the trial record from his trial counsel; his first request for same—specifically, in Spanish—was presented in his Application for Appointment of Counsel (ECF No. 1-3, 8). These facts further support this Court's conclusion that Petitioner's ineffectiveness claim within Claim Fifteen is meritless.

confinement, not "the fact or length of [his] sentence" and would not "alter or undo his conviction" if this Court were to conclude—which it does not—they violate the Eighth Amendment.[14] *Id.* Thus, the Eighth Amendment violations Petitioner alleges in Claim Fifteen should have been brought under 42 U.S.C. § 1983, not the AEDPA. *Id.*

For the foregoing reasons, Claim Fifteen's procedural default is not excused and Petitioner's fifth objection to the Magistrate's R&R is overruled.

### F.    Sixth Objection

Petitioner's sixth objection refers broadly to the Magistrate's recommended disposition of the Sixth Amendment claims Petitioner made in his § 2254 Petition, without specifying exactly to which claims he intends this objection to apply. (Objs. 9–10.) As previously discussed, federal district courts are not required to review *de novo* objections to a Magistrate's R&R that lack specificity. *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) (citing 28 U.S.C. § 636(b)(1); *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir. 1984)). Nevertheless, Petitioner's sixth objection is overruled for the following reasons.

---

[14] Petitioner's allegations fail to show that his Eighth Amendment rights were violated by being placed in a state prison that was not near his trial counsel or family, and being prohibited from using the telephone therein. "For an alleged deprivation to rise to the level of an Eighth Amendment violation, it must result in the denial of the minimal civilized measure of life's necessities." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1992)) (internal quotation marks omitted). For example, an inmate's incarceration in solitary confinement at a state prison due to overcrowding did not violate the Eighth Amendment because his basic nutritional, hygienic, medical, and shelter needs were met. *Gibson v. Lynch*, 652 F.2d 348, 352 (3d Cir. 1981). Likewise, Petitioner's allegations do not give rise to an Eighth Amendment violation for cruel and unusual punishment because the Commonwealth did not deny him "of the minimal civilized measure of life's necessities." *Betts*, 621 F.3d at 256. Therefore, not only was Petitioner's Eighth Amendment argument improperly brought under the AEDPA, it also lacks merit.

### i.  Claims One through Three

Petitioner's sixth objection is inapplicable to Claims One, Two, and Three because those claims are based purely on state-law questions and thus not cognizable on habeas review. (Pet. 16–18.) Claim One challenges the state trial court's decision to admit Iliana Tirado's testimony into evidence. (Pet. 16.)  Claim Two similarly challenges the trial court's decision to admit into evidence "references to Petitioner Guzman as being a drug supplier, a drug dealer, a drug enforcer, and a violent person." (Pet. 17.) In Claim Three, Petitioner alleges "[t]he verdict was not supported by the weight of the trial evidence." (Pet. 18.) Because Claims One, Two and Three are based upon state-law questions—not the Sixth Amendment—Petitioner's sixth objection cannot apply to them.

### ii.  Claims Four and Five

Claims Four and Five are essentially identical. (*See* Pet. 20–21.) Both claims allege that Petitioner's trial lawyers were ineffective for failing to call available alibi witnesses to testify and for advising Petitioner against doing the same.[15] (Pet. 20–22.) Interestingly, however, Petitioner asserts in his § 2254 Petition that Claim Four—but not Claim Five—was exhausted in state-court proceedings.[16] (Pet. 20–21.) However, this argument is rendered irrelevant because Claim Four includes the allegation Petitioner raises in Claim Five.

---

[15] Claim Four alleges both of Petitioner's trial lawyers "were ineffective [for] failing to present available alibi witnesses, and by unreasonably instructing Petitioner to not present an alibi defense and supporting testimony." (Pet. 20.) Claim Five alleges only one of Petitioner's trial lawyers (Gary Server) "was ineffective [for] advising and instructing Petitioner Guzman to not present available alibi witnesses nor a defense." (Pet. 21.) Claim Four, therefore, encompasses Claim Five's argument.

[16] Petitioner asserts that Claim Five was not brought by his PCRA counsel in state court, and his assistance was thus ineffective. (Pet. 21.) As a result, he argues that this Court should excuse his failure to exhaust Claim Five. (Pet. 21.)

The PCRA court rejected the ineffectiveness of counsel argument that Petitioner asserts in Claims Four and Five. *See Commonwealth v. Guzman*, No. 788 EDA 2011, slip op. at 7 (Pa. Super. Ct. Sept. 5, 2012). The PCRA court held that the trial court record clearly established that it was Petitioner's (not his trial lawyers') decision to forego calling available alibi witnesses and that he made that decision "knowingly, intelligently, and voluntarily." *Id.* at 8. The trial court conducted a colloquy during which it asked Petitioner whether he was aware of his right to call the alibi witnesses that were waiting outside the courtroom and ready, willing, and able to testify; whether he desired to waive that right; and whether he was satisfied with his trial attorneys' representation. *Id.* at 7 (citing Trial Tr. vol. 5, 83–85.) Petitioner responded affirmatively to all of those inquiries. (Trial Tr. vol. 5, 83–85.) Accordingly, the PCRA court rejected his claim that his trial lawyers were ineffective for failing to present available alibi witnesses because "a defendant who makes a knowing, voluntary, and intelligent decision concerning trial strategy will not later be heard to complain trial counsel was ineffective on the basis of that decision." *Id.* at 7 (quoting *Commonwealth v. Paddy*, 800 A.2d 294, 316 (Pa. 2002)). The Superior Court of Pennsylvania affirmed the PCRA court's ruling, *id.* at 6–8, and the Supreme Court of Pennsylvania denied allocator, *Commonwealth v. Guzman*, 63 A.3d 1244 (Pa. 2013).

Since Petitioner's fourth and fifth claims for habeas relief were adjudicated on the merits in state court, the AEDPA deference standard applies to this Court's review of that court's merits determination. *Rolan v. Coleman*, 680 F.3d 311, 321 (3d Cir. 2012). Inasmuch as Petitioner has provided this Court with no basis to establish that the state court's adjudication of the claim "resulted in a decision contrary to, or involved in an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or" (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts

in light of the evidence presented in the State court proceeding[,]" the state court's merits determination regarding those claims was reasonable under both prongs of the AEDPA's deferential standard. *See* 28 U.S.C. § 2254(d)(1)–(2).

First, in cases involving claims that were adjudicated on the merits in state court, federal courts only have "authority to issue [a] writ [of habeas corpus] in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflict's with [the Supreme Court of the United States'] precedent." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Petitioner has failed to show that the PCRA court's ruling on Claims Four and Five of his § 2254 Petition "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. Petitioner has cited no Supreme Court precedent that would justify such a finding by this Court. (*See* Pet. 20–22; Objs. 9–10.)

Second, the PCRA court's determination was based purely on the trial court record, which unequivocally establishes that Petitioner voluntarily elected not to call alibi witnesses to testify on his behalf. Thus, the PCRA's adjudication of Claims Four and Five did not result "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d)(2).

The PCRA court's determination regarding Petitioner's fourth and fifth claims was reasonable under both prongs of the AEDPA standard. Thus, insofar as Petitioner's sixth objection to the R&R was intended to pertain to Claims Four and Five, it is overruled.

### iii. Claims Six through Ten and Fifteen

Petitioner's sixth objection is inapplicable to Claims Six through Ten and Fifteen (including any alleged Sixth Amendment violations incorporated therein) because those claims are without merit for the reasons set forth herein above.[17]

### iv. Claims Eleven through Thirteen

Insofar as they allege Sixth Amendment violations, Claims Eleven through Thirteen fall under Petitioner's sixth objection. However, for the following reasons, Petitioner is not entitled to relief regarding same.

Petitioner's eleventh habeas claim alleges that Pennsylvania's criminal law, pursuant to which he was convicted of various offenses, was never lawfully enacted. (Am. Pet. 3.) Claim Twelve argues that Pennsylvania's court rules, its rules of criminal procedure, and its rules of evidence that governed his prosecution were "promulgated, drafted, adopted, and legislated upon by the state's judicial branch, in violation of . . ." the Constitution of the United States. (Am. Pet. 4.) His thirteenth claim alleges that the Constitution of the Commonwealth of Pennsylvania, as a whole, is invalid because Pennsylvania was never granted the authority "by the Continental Congress to amend, abolish or adopt any constitution other than the Constitution for [P]ennsylvania of September 28, 1776." (Am. Pet. 5.) Petitioner further asserts in Claim Thirteen, that Pennsylvania's criminal law is also invalid because the Commonwealth was likewise never granted the authority to implement them, which renders his conviction for violating them meaningless. (Am. Pet. 5.)

---

[17] More specifically, Claim Seven was addressed in Section IV(A), *supra*; Claim Ten was addressed in Section IV(B), *supra*; Claims Six, Eight, Nine, and Fifteen were addressed in Section IV(C), *supra*; and Claim Fifteen was further analyzed in Section IV(E), *supra*.

These claims are all premised upon state-law questions, and "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)) (internal quotation marks omitted). Claims Eleven through Thirteen are thus not cognizable on habeas review.

However, in addition to the allegations regarding Pennsylvania state-law violations, Petitioner also argues his trial and PCRA counsel were ineffective for failing to identify the purported Pennsylvania state-law violations in state-court proceedings. (Am. Pet. 2–4.) Such claims must overcome the highly deferential standard expounded in *Strickland v. Washington*, 466 U.S. 668, 687 (1984) in order to constitute ineffective assistance of counsel.

A lawyer's decision to refrain from presenting meritless claims does not constitute ineffective performance under *Strickland*. 466 U.S. at 698–700. The alleged defects in Pennsylvania state law that Petitioner references in Claims Eleven through Thirteen are meritless, and Petitioner fails to cite any legal authority to the contrary. (*See* Am. Pet. 3–5; Objs. 9–10.)  In particular, Claims Eleven and Thirteen are meritless because the Commonwealth's Court of Common Pleas has subject matter jurisdiction to adjudicate matters arising from alleged violations of Pennsylvania's Crimes Code, and Petitioner failed to cite any law to support his assertions that suggest otherwise. *Johnson v. Giroux*, Civ. No. 15-4242, 2016 U.S. Dist. LEXIS 62415, at *33–34 (E.D. Pa. May 10, 2016); *Commonwealth v. Bethea*, 828 A.2d 1066, 1074 (Pa. 2003) (citing Pa. Const. art. 5, § 5). Claim Twelve lacks merit because, "[i]n 1968, the [Commonwealth's] legislature granted [the Supreme Court of Pennsylvania] exclusive rulemaking authority in Article V, § 10 of the Pennsylvania Constitution[,]" and its promulgation of the rules and procedures referenced in Claim Twelve fall under that authority. *Commonwealth*

*v. Morris*, 771 A.2d 721, 736 (Pa. 2001). Therefore, Petitioner's trial and PCRA lawyers were not ineffective for failing to bring those groundless claims.

Insofar as Petitioner's sixth objection to the R&R was intended to pertain to Claims Eleven through Thirteen, it is overruled. Those claims are not viable; they are procedurally defaulted because Petitioner failed to exhaust them in state-court proceedings, and his ineffective assistance of counsel claims provide no basis upon which that default may be excused. *See Martinez v. Ryan*, 132 S. Ct. 1309, 1319–20 (2012) (acknowledging that a procedurally defaulted claim that lacks merit and any factual support need not be excused).

### v. Claim Fourteen

To the extent Claim Fourteen implicates the Sixth Amendment, it also falls under Petitioner's sixth objection. However, Claim Fourteen fails to provide any support for that objection because it is meritless.

Claim Fourteen alleges Petitioner's mandatory life sentence without the possibility of parole violates the Eighth Amendment's prohibition against cruel and unusual punishment and the Equal Protection Clause of the Fourteenth Amendment. (Am. Pet. 6.) Petitioner's fourteenth claim further asserts that, in violation of the Sixth Amendment, his lawyers' assistance was ineffective because they all failed to raise the aforementioned Eighth and Fourteenth Amendment claims in state-court proceedings. (Am. Pet. 6.)

Petitioner cites *Miller v. Alabama*, 132 S. Ct. 2455 (2012) in support of those arguments. (Am. Pet. 6.) In *Miller*, the Supreme Court of the United States held that "mandatory life-without-parole sentences for juveniles violate the Eight Amendment . . . [b]ecause juveniles have diminished culpability and greater prospects for reform." *Miller*, 132 S. Ct. at 2464. Petitioner was nineteen (19) years old when he killed José Tirado and twenty-four years old when he was

sentenced to life in prison without the possibility of parole for committing that crime. (Ct. Com.

Pl. Crim. Docket 2–3.) Petitioner was born on March 23, 1981, he killed Tirado on December 24,

2000, and his sentencing for that crime occurred on April 10, 2006. (Ct. Com. Pl. Crim. Docket

2–3.) Thus, *Miller* provides no support for any of Petitioner's constitutional arguments contained

within Claim Fourteen because he was not a juvenile when he killed Tirado or when he was

sentenced. 132 S. Ct. 2455 (2012).

Furthermore, Petitioner's lawyers were not ineffective for failing to raise the Eighth and

Fourteenth Amendment claims in state-court proceedings because "there can be no Sixth

Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless

argument." *United States v. Bui*, 795 F.3d 363, 366–367 (3d Cir. 2015) (quoting *United States v.*

*Sanders*, 165 F.3d 248, 253 (3d Cir. 1999)) (internal quotation marks omitted). Therefore,

Petitioner's sixth objection to the R&R is overruled to the extent it applies to Claim Fourteen.

### vi.     Additional Sixth Amendment Claims

In his sixth objection, Petitioner also attempts to append two additional Sixth Amendment

claims to his § 2254 Petition. (Objs. 9.) However, these claims are barred because,

"unless the interest of justice requires it, new issues and evidence shall not be raised after the

filing of the [R&R] if they could have been presented to the magistrate judge." *Munoz v. Grace*,

Civ. No. 05-4199, 2007 U.S. Dist. LEXIS 58516, at *28–40 (E.D. Pa. Aug. 10, 2007) (quoting

E.D. Pa. Local R. Civ. P. 72.1(IV)(c)). Both additional claims are unsupported by law or fact, as

they rely on the same arguments underlying Petitioner's fifth and sixth claims (Objs. 9; Pet. 21–

22), both of which this Court concluded were meritless hereinabove. The interest of justice does

not, therefore, require this Court to consider these additional Sixth Amendment claims. *Munoz*,

2007 U.S. Dist. LEXIS 58516, at *28–40.

### G. Seventh Objection

Petitioner's seventh objection to the R&R pertains to his habeas claims that both of his defense attorneys were ineffective for failure to present available alibi witnesses, and that one of his attorneys (Gary Server) was ineffective for advising Petitioner to not present an alibi defense. For the reasons set forth in Section IV(F)(ii), *supra*, Petitioner's seventh objection is overruled. (Pet. 20–21; Objs. 10.)

### H. Eighth Objection

Petitioner's eighth objection pertains to the fourteenth claim in his § 2254 Petition, wherein he alleges his mandatory life sentence without parole violates the Eighth and Fourteenth Amendments, and his lawyers were ineffective for failing to raise those arguments. (Objs. 10). For the reasons set forth in Section IV(F)(v), *supra*, his eighth objection is overruled.

### I. Petitioner is not entitled to an evidentiary hearing or appointment of counsel.

Petitioner requests that an evidentiary hearing be held for his ineffective assistance of counsel claims regarding his lawyers' failure to call available alibi witnesses, and that he be appointed counsel. (Objs. 11.) Petitioner is entitled to neither.

### i. Evidentiary Hearing

Federal courts are not permitted to provide habeas relief for claims that were previously adjudicated on the merits in state-court proceedings unless one of the exceptions in 28 U.S.C. § 2254(d) applies. Furthermore, federal habeas courts are permitted to grant evidentiary hearings only if the requirements of § 2254(e)(2) are satisfied. When a habeas claim is subject to § 2254(d) but does not satisfy either of the exceptions therein, it is "unnecessary to reach the question of whether § 2254(e)(2) would permit a federal hearing on that claim." *Cullen v. Pinholster*, 563 U.S. 170, 184 (2011) (quoting *Williams v. Taylor*, 529 U.S. 420, 444 (2000))

(internal quotations marks omitted). In other words, "when the state-court record precludes relief under the limitations of § 2254(d), a district court is not required to hold an evidentiary hearing." *Pinholster*, 563 U.S. at 183 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)) (internal quotation marks omitted).

The ineffectiveness claims for which Petitioner requests an evidentiary hearing were adjudicated on the merits in state court. *Commonwealth v. Guzman*, No. 788 EDA 2011, slip op. at 7 (Pa. Super. Ct. Sept. 5, 2012). The PCRA court rejected those claims without holding a hearing because they lacked merit on their face, as the trial record showed Petitioner made the decision to not call the available alibi witnesses knowingly, intelligently, and voluntarily. *Commonwealth v. Guzman*, CP-51-CR-0500771-2003, at 10 (Pa. Ct. Com. Pleas Apr. 30, 2012). This Court concluded in Section IV(F)(ii), *supra*, that those claims and Petitioner's objections thereto failed to satisfy either of § 2254(d)'s exceptions. Accordingly, an evidentiary hearing is not warranted on those claims. *Pinholster*, 563 U.S. at 184.

## ii.    Appointment of Counsel

Petitioner requests that this Court appoint him counsel to prosecute his § 2254 Petition. (Pet. 15, 29; Objs. 11.) He argues appointment of counsel is appropriate because he cannot read, write, or speak English, and both the trial record and resources at the prison's law library are written in English. (Appl. Appt. Counsel 2–3, ECF No. 1-3.)

In federal habeas corpus proceedings, there is no constitutional right to counsel. *Simon v. Gov't of V.I.*, 679 F.3d 109, 115 (3d Cir. 2012). A federal court is only required to appoint counsel to a petitioner seeking relief under 28 U.S.C. § 2254 if it determines that an evidentiary hearing is warranted, and the petitioner qualifies for appointment under 18 U.S.C. § 3006A. Rules Governing § 2254 Cases in the United States District Courts, Rule 8(c), 28 U.S.C. foll. §

2254. Indigent habeas petitioners may be granted counsel pursuant to § 3006A "[w]henever the United States magistrate judge or the court determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2); *Reese v. Fulcomer*, 946 F.2d 247, 263 (3d Cir. 1991), *cert. denied*, 503 U.S. 988 (1992), *and superseded on other grounds by statute*, 28 U.S.C. § 2254(d). In determining whether the interests of justice necessitate an appointment of counsel, a "district court must first decide if the petitioner has presented a nonfrivolous claim and if the appointment of counsel will benefit the petitioner and the court." *Reese*, 946 F.2d at 263–64. "[T]he complexity of the factual and legal issues in the case, as well as the pro se petitioner's ability to investigate facts and present claims" are factors that should be considered in determining whether the petitioner and the court would benefit from granting a request for appointment of counsel. *Id.* at 264 (citing *Battle v. Armontrout*, 902 F.2d 701, 702 (8th Cir. 1990)).

In *Reese*, the Court of Appeals held that the district court's refusal to appoint counsel for a habeas petitioner did not constitute an abuse of discretion for three reasons. *Reese*, 946 F.2d at 264. First, the petitioner "fully comprehended the issues in [that] case." *Id*. Second, the court believed that those issues "were neither factually nor legally complex." *Id*. Finally, the petitioner demonstrated that he was capable of "forcefully and coherently" presenting his claims for habeas relief because he provided the documents requested by the district court and filed two motions without the assistance of counsel. *Id.*

Because this Court has concluded herein that Petitioner is not entitled to an evidentiary hearing, it is not required to grant Petitioner's request for appointment of counsel. *See* Rules Governing § 2254 Cases, Rule 8(c), 28 U.S.C. foll. § 2254. In exercising its discretionary authority under 18 U.S.C. § 3006A(a)(2), this Court further concludes that the interests of justice do not necessitate appointing Petitioner counsel because neither Petitioner nor the court would

benefit therefrom, as he has failed to present any claims that would succeed on the merits. *Reese*, 946 F.2d at 263–64; *Brown v. DiGuglielmo*, Civ. No. 07-3465, 2007 U.S. Dist. LEXIS 87614, at *2 n.1 (E.D. Pa. Nov. 29, 2007). Moreover, Petitioner "forcefully and coherently" presented his claims without the assistance of court-appointed counsel—albeit, allegedly with some help from other inmates—by filing his § 2254 Petition and his amendment thereto, which together lay out fifteen claims for relief in English (ECF Nos. 1-3; 2). *Reese*, 946 F.2d at 264. Petitioner also filed several additional pleadings without the assistance of court-appointed counsel, one of which was especially detailed and approximately forty (40) pages in length (*e.g.,* ECF Nos. 14; 18; 19). *Reese*, 946 F.2d at 264; *see also Kim v. Klem*, Civ. No. 03-1628, 2003 U.S. Dist. LEXIS 27805, at *36 n.15 (E.D. Pa. July 13, 2003) (denying habeas petitioner's motion for appointment of counsel because the record demonstrated he understood the issues in the case, his habeas claims were coherent, and the court could resolve his claims based on the record). Petitioner's request for appointment of counsel is therefore, denied.

## V.    Conclusion

For the reasons set forth hereinabove, all of Petitioner's Objections shall be overruled. As for the portions of the R&R to which no objection was made, this Court has reviewed the R&R and finds that no clear error exists. Accordingly, the Magistrate's R&R shall be adopted and Petitioner's request for habeas relief shall be denied. Because Petitioner failed to make a substantial showing of the denial of any constitutional right, this Court finds that reasonable jurists would not disagree with the instant holding and a Certificate of Appealability shall not issue. *See, e.g.,* 28 U.S.C. § 2253(c)(2); *Santana v. United States*, 98 F.3d 752, 757 (3d Cir. 1996).

An appropriate Order follows.

BY THE COURT:

C. Darnell Jones, II     J.